No. 83-175

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN THE MATTER OF THE
ADOPTION OF R.A.S.

APPEAL FROM:    District Court of the Third Judicial District,
                In and for the County of Deer Lodge,
                The Honorable Robert J. Boyd, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Michael J. McKeon argued, Anaconda, Montana

        For Respondent:

                Knight, Dahood, McLean & Everett; David M. McLean
                argued, Anaconda, Montana

                        Submitted:  1/19/84

                        Decided:    3/26/84

Filed:      MAR 2 6 1984

Ethel M. Harrison
                        Clerk

Mr. Justice L.C. Gulbrandson delivered the Opinion of the Court.

The natural father, W.A.S., appeals from an order of the District Court, Third Judicial District, Deer Lodge County, allowing the adoption of his minor son, R.A.S., without the consent of the natural father. We affirm.

The natural father and the natural mother were married on August 9, 1975. A minor son, R.A.S., was born as issue of the marriage on November 23, 1977.

The marriage between the natural father and mother was dissolved on March 16, 1979 in the Thirteenth Judicial District, Yellowstone County. Custody of the child was awarded to his mother, with his natural father being ordered to pay $150 per month child support through the office of the Clerk of Court, Yellowstone County. The parties voluntarily vacated the requirement to pay child support through the Clerk of Court and, instead, support payments were made directly to the natural mother. The adoptive father, W.K.D., and the natural mother were married on April 25, 1981.

The child support payments were due on the first day of every month. The appellant, natural father, paid the child support each month from the time of the divorce through the month of June, 1981. No support payment was made in July, 1981. In August, 1981, the appellant made an additional $150 child support payment which was credited to his obligation for July, 1981 that had not been timely paid. Thereafter, on or about December 20, 1981, a payment of $450 was made which was credited to back support payments due for August, September and October of 1981. No further support

-2-

payments were received by the natural mother prior to the adoptive father's filing of a petition for the adoption of the child on December 2, 1982. In addition, no child support payments have been made since the filing of the petition for adoption.

At trial, the District Court determined that during the period from November, 1981 through November, 1982, the appellant, natural father, was gainfully employed and financially capable of making the required child support payments but voluntarily chose not to do so. As a result, the District Court held that the consent of the appellant to the petition for adoption was not required pursuant to the provisions of Section 40-8-111(1)(a)(v), MCA, and the best interests of the child would be served by granting the petition.

In pertinent part, Section 40-8-111(1)(a)(v), MCA, provides:

> "(1) An adoption of a child may be decreed when there have been filed written consents to adoption executed by:
>
> "(a) both parents, if living, or the surviving parent of a child, provided that consent is not required from a father or mother:
>
> ". . .
>
> "(v) if it is proven to the satisfaction of the court that the father or mother, if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption . . ."

At trial, the appellant argued that the $450 payment made on December 20, 1981, was made during the period of one year before the filing of the petition on December 2, 1982, and therefore his consent to the adoption was necessary.

-3-

However, the District Court held that the word "support" indicates a continued monetary contribution on a specified basis. Thus, appellant's support obligation was not made on a continuing basis and by giving credit to the appellant for the $450 payment made on December 20, 1981, the District Court determined that no support was made "during" the period of one year before the filing of the petition for adoption. From that determination, the natural father appeals.

Appellant raises one issue on appeal: Did the District Court err in holding that the consent of the appellant was not necessary in granting the petition for adoption?

Appellant argues that he contributed to the support of the child "during" the one year period before the filing of the petition for adoption was filed December 3, 1982. Appellant points out that child support in the sum of $450 was paid on or about December 20, 1981. Appellant asserts that Section 40-8-111(1)(a)(v), MCA, must be strictly construed in favor of the appellant and a literal construction of the statute compels the Court to reverse the District Court because appellant made a payment within one year prior to the filing of the petition of adoption.

Respondent maintains that if the argument of the appellant is accepted, a noncustodial parent could defeat the adoption of his natural child by merely making a portion of one payment on the same date each year. Thus, respondent asserts, to allow the statute to be interpreted and construed in this manner would be ludicrous and contrary to legislative intent.

-4-

The central issue in this case is whether the appellant has not contributed to the support of the minor child during a period of one year prior to the filing of the petition for adoption.

In adoption cases the initial threshold requirement is statutory compliance. In the Matter of the Adoption of Smigaj (1977), 171 Mont. 537, 560 P.2d 141. Thus, Section 40-8-111(1)(a)(v), MCA, sets forth a two-pronged test to determine whether the natural parent's consent is required for adoption. First, it must be determined whether the nonconsenting parent has not contributed to the support of the child during a period of one year prior to the filing of the petition for adoption and, second, it must be determined whether the nonconsenting parent had the ability to contribute to the child's support. In the Matter of the Adoption of S.L.R. (Mont. 1982), 640 P.2d 886, 39 St.Rep. 156. The burden rests on the petitioner to show that the requirements of Section 40-8-111(1)(a)(v), MCA, have been met and, because of the harshness of permanently terminating parental rights, strict compliance with the statute is required. In the Matter of Challeen (1977), 172 Mont. 362, 563 P.2d 1120; in re Adoption of Biery (1974), 164 Mont. 353, 522 P.2d 1377.

In the present case, appellant admitted that he had the ability to make the required child support payments. The second phrase of the statute, ". . . has not contributed to the support of the child during a period of one year before the filing of the petition . . .," precipitates the present dispute. There is no dispute that the support of the child was paid to the month of August, 1981. It is

further without dispute that a payment of $450, which brought the payments up to November 1, 1981, was made on or about December 21, 1981, some eleven months and eighteen days before the filing of the petition for adoption. The appellant contends the payment was made ". . . during a period of one year before the filing of the petition for adoption . . ."

Our basic policy in adoption cases has been " . . . a statute should not be interpreted in favor of a father who seeks the benefit of parental rights but shuns the burden of parental obligatons." In Re Burton's Adoption (1956), 146 Cal.App.2d 125, 305 P.2d 185, 191; cited with approval, In the Matter of the Adoption of S.L.R., supra. Accordingly, the District Court noted that appellant ". . . was able to support his minor son, but voluntarily chose a course of action involving a new lifestyle and self-inflicted alcoholism to cause him to forego both support and visitation of his child." As we noted in In the Matter of the Adoption of S.L.R., supra, "[t]he father voluntarily chose a lifestyle inconsistent with his parental obligations. That he had the right to choose such a lifestyle is conceded. That he had a legal right to prevent the adoption of his child, however, is not consistent with his voluntary failure to contribute to the child's support."

There is no Montana case law specifically construing the word "during" for the purpose of child support payments. However, in State ex rel. Palagi v. Regan, County Clerk (1942), 113 Mont. 343, 126 P.2d 818, the Court said the legislature is presumed to have understood the elementary rules of construction of the English language, and a statute

-6-

must be construed according to the context and approved useage of the language. Black's Law Dictionary, 5th Ed., p. 453 defines "during" as: "throughout the course of; throughout the continuance; in the time of." We note that appellant stated at trial that he made the December, 1981, payment of $450 because he was behind on his payments. Thus, he did not intend the payment to be "throughout the course of" a one year period prior to the filing of the petition of adoption. In addition, we stated in *In the Matter of the Adoption of Smigaj*, supra, that the word "support" in the context of the consent statutes refers to the "financial support that a parent owes a child." In the case at bar, the support paid on December 20, 1981, was actually due and owing for previous months. Thus, it was not actually "support" as contemplated within the adoption statutes "during" the year prior to the filing of the petition of adoption. We hold that to construe the statute as requiring the nonconsenting parent to remain current within one year on his or her support payments is in accord with the policy of the adoption statutes and the intent of the legislature. Accordingly, the payment made by appellant on December 20, 1981, was not "support" contributed during a period of one year prior to the filing of the petition for adoption and therefore the judgment of the District Court is affirmed.

L. C. Gulbrandson

Justice

-7-

We concur:

_____

_____

_____
Justice


Chief Justice Frank I. Haswell deems himself disqualified and does not participate in this decision.


Mr. Justice Daniel J. Shea dissents and will file a written dissent later.

Mr. Justice Fred J. Weber dissents:

I respectfully dissent from the majority opinion. While the result seems fair, I am unable to approve the statutory construction in the opinion.

The pertinent portion of section 40-8-111(1), MCA states:

> "(1) An adoption of a child may be decreed . . . (v) if it is proven to the satisfaction of the court that the father . . . if able, has not contributed to the support of the child during a period of 1 year before the filing of a petition for adoption; . . ."

The petition was filed on December 2, 1982. Four hundred and fifty dollars was paid by the father for the support of the child on December 20, 1981. Clearly such payment was made "during a period of 1 year before the filing of [the] petition." While it is true that such payment was for a period of time prior to 1 year, nonetheless the payment was made during the period of 1 year before filing and therefore meets the requirements of the statute. I believe the Black's Law Dictionary definition as described in the majority opinion also is met. Such payment was made by the father "throughout the course of" 1 year before filing. Such payment also was made "throughout the continuance" of 1 year before the filing. Last, such payment also was made "in the time of" 1 year before the filing.

I would reverse the District Court.

_____
Justice

9

DISSENT OF MR. JUSTICE DANIEL J. SHEA

No. 83-175

IN THE MATTER OF THE
ADOPTION OF R.A.S.

FILED

JAN 3 - 1985

*Ethel M. Harrison*
CLERK OF SUPREME COURT
STATE OF MONTANA

Mr. Justice Daniel J. Shea, dissenting:

I dissent. In terminating parental rights, all reasonable constructions of the statute must be made in favor of non-termination and strictly construed against the state.

Section 40-8-111(1), MCA, is essentially a penal statute because it forever terminates the right of the natural parent. As such, it should be construed in favor of non-termination.

Also, the statute's language is ambiguous: "during a period of 1 year before the filing of the petition of adoption" is susceptible of various interpretations, and begs abuse. Whatever the conduct of the parents, the result will be a forced termination of the parent-child relationship. It is a travesty that troubles between warring parents should be visited upon innocent children. There are better and more equitable remedies available to the parties for temporary nonsupport than permanent termination of parental rights.

I explained the pitfalls with this statute nearly three years ago in my dissent in In the Matter of S.L.R. (1982), 196 Mont. 411, 416, 640 P.2d 886, 888-889.

I would reverse the District Court.

Daniel J Shea
Justice